lows the letter.) We cannot think that Mr. Guthrie, who was then secretary of the treasury, and whose great ability can never justly be drawn in question, ever intended to say that, under the provisions of the act of 1842, which directs appraisers "by all reasonable ways and means in his or their power to ascertain, estimate and appraise the true and actual market value and wholesale price, any invoice or affidavit thereto to the contrary notwithstanding," they were not to report the value as they found it. It may be that the secretary would consider a different report as evidence of error in judgment; but if the judgment of the appraiser was correct in finding the value less than the invoice price, it cannot be possible that the secretary of the treasury would be justified in directing appraisers to be controlled by the invoice in making their return. The true duty of the appraisers is to find the value, and state it accordingly. It is then the duty of the collector, in proper cases, to apply the proviso in question. No better illustration could be had of the error and different proceeding, than the case now at bar.

JUDGE SMALLEY'S DECISION. No formal opinion was ever prepared by Judge SMALLEY. A verdict was taken nisi, and after a careful examination of the questions in the case he ordered judgment upon it for the plaintiff. He was requested to prepare a written opinion, and to aid him in doing so, the plaintiff's last brief was prepared, which is substantially correct; but he did not find time to write any opinion before the action of the treasury department in paying the judgment. The following imperfect statement of Judge SMALLEY'S ruling at the trial is taken from the New York Herald of February 22, 1867:

"The court said that the rights and equity of the case were very clearly with the plaintiff. There was no doubt at all that the government had $10,000 of the plaintiff's money which it had no earthly right to, and which in equity and good conscience it was bound to restore without instituting a suit to recover through the courts. The evidence shows, and the officers themselves show, that the wool in question was worth only three cents as a dutiable article. The defence is purely technical, which, I must say, I regret a great government like ours should ever make. It is not creditable to the government to embarrass merchants in this way; to say to them, 'The merchandise which I have taken by a strong arm, these $10,000 of yours, plaintiff, which I have possessed myself of, I will keep, availing myself of the technicalities of the law, so as to keep it and withhold it from you.' The court must deal with the law as it finds it. The courts do not make the law, nor do they execute it; the courts only administer it as they find it. The law officers of the government—the United States district attorney in this case—are

bound to defend these cases arising under these acts, and the courts are bound to adjudicate on them; but it is clear that a great wrong is done in compelling the collectors to bear the brunt of these actions. I will direct a verdict for the plaintiff in the case on the facts, and if the counsel desire it, I will hear arguments on the points of law hereafter."

Verdict accordingly for the plaintiff.

## Case No. 3,605.
### DAVIDSON v. HENOP.
[1 Cranch, C. C. 280.][1]

Circuit Court, District of Columbia. Dec. Term, 1805.

TRIAL—ORDER OF ARGUMENTS.

If there be only one issue, and the defendant holds the affirmative of that issue, he has a right to open and close the argument.

Assumpsit by James Davidson, for the use of the Bank of the United States, against Daniel Henop, on a promissory note. The defendant pleaded infancy only, upon which the issue was joined.

THE COURT was of opinion that the plaintiff was not obliged to produce the promissory note mentioned in the declaration, but that the defendant held the affirmative of the issue, and had a right to begin and close the argument.

## Case No. 3,606.
### DAVIDSON v. LEWIS.
[1 MacA. Pat. Cas. 599.]

Circuit Court, District of Columbia. Oct. Term, 1858.

PATENTS—PRIORITY OF INVENTION—EVIDENCE IN INTERFERENCE PROCEEDINGS.

[1. Priority should be adjudged to him who first conceived the idea, and so described it, by words or drawings, as to enable a skillful workman to bring it into useful, practical operation; and if he used due diligence he is entitled to the patent, although another may have first succeeded in perfecting a machine.]

[2. In determining the question of priority, contradictions between two witnesses, whose general character for veracity has not been questioned, should rather be reconciled without imputing improper motives than that their concurrent testimony on another point should be entirely rejected.]

[This was an appeal by Charles H. Davidson from a decision of the commissioner of patents in an interference proceeding awarding priority to one Lewis in respect to the invention of an improvement in "breast shells."]

J. B. Crosby, for appellant.

MORSELL, Circuit Judge. The only matter in controversy in this case is, which of

[1] [Reported by Hon. William Cranch, Chief Judge.]